The last case for this morning is Pirela v. Commissioner Martin Horn, No. 14-1938 Before we go on the clock, is this case being handled pro bono? Yes, Your Honor. It is? Oh, great. Thank you. Good morning. May it please the Court. My name is Aline Fairweather from Pepper Hamilton for the appellant Mr. Simone Pirela. And I've asked to reserve three minutes for rebuttal. That's granted. In this appeal, Mr. Pirela is asking the Court to apply well-settled law to extraordinary facts. He's asking for a new trial because he was deprived of his right to a jury at the guilt phase of his 1983 capital trial. The constitutional violations here were triggered by the Court's extraordinary statement on the record, he's not subject to the death penalty as long as he has me for a judge. Whatever the late Justice Stout may have meant by her words, what matters here is that Mr. Pirela and his counsel believed the plain meaning of the statement and Mr. Pirela relied on them in waiving his right to a jury trial. Well, the obvious thing is, and a point made repeatedly by your adversary, is there had to have been some discussion ahead of time about the waiver because a little bit earlier, maybe a few lines earlier in the transcript, there was reference of, I thought you were waiving the jury in this case. Why are we going here, basically? There's nothing in the record, is there, to show that there was any equivocation or that it wasn't? I mean, they must have made a representation to the Court along those lines. Why should we doubt what the Pennsylvania courts found was, you know, basically this comment, which was interesting, why the Pennsylvania courts might have been wrong that he'd already made the decision and the judge's comment did not induce a waiver? Well, I think, first of all, the Pennsylvania Supreme Court was asking the wrong decision. Sorry, the wrong question. The question the Pennsylvania Supreme Court should have been asking was what the type of decision was that was made, whether there was evidence at that point that Mr. Pirela had made a voluntary, knowing, and intelligent decision. All we have at that point when Mr. Phillips' counsel says, yes, it's going to be a waiver, is Mr. Phillips' statement. We don't know that that was Mr. Pirela's decision himself. Counsel is going to argue that three days later a more formal, like, a colloquy was conducted in which he waived the jury. How do you score that with your position? Well, I think, and counsel for the Commonwealth is no doubt going to focus on the question, when he was asked by the judge whether anyone had promised him anything in exchange for a waiver, and he said no. That, I think, is not inconsistent with a reasonable interpretation of the question, which is, has anyone else promised you something? I think it was reasonable to consider that question. If that was Mr. Pirela, isn't it the only thing on my mind? Well, I have many questions, but since we're on this, we should. I'm sure you do, Your Honor. But if I would draw the court's attention to an analogous case that the First Circuit had, McElhinney v. United States, where the court was looking at a similar question where somebody had been asked in the context of a guilty plea whether they'd been promised anything, and the court said there that defendants can generally deny that there's been any impropriety, but they said there particularly the defendant would not have been expected, that the question was relating to a discussion with the government. Here, even more, it seems that it was reasonable, a reasonable interpretation, is that the court was asking about somebody else's promise, and she certainly did not say to Mr. Pirela, didn't draw attention to her promise. In fact, after that statement was made, he's not subject to the death penalty as long as he has me for a judge, she never returned to it. At the waiver colloquy, she never said anything like, you know, last Friday, Mr. Pirela, I know I said he's not subject to the death penalty as long as he has me for a judge. I want to make sure that you understand when you're waiving your right to a jury that I can still impose the death penalty on you. That's true. That would have been a perfect world, I guess. We wouldn't be here if that were the case. But, you know, you read this, I mean, you've been living with this for a very long time. Thank you again for... Indeed, since 1999, I believe. Thank you for taking it on. We haven't been living with it for so long, but when I first read that statement, I thought to myself, this is a bifurcated matter. And at best, this is a promise about the penalty phase. Does it, I mean, does this, I don't know, are we putting too much, are you putting too much weight on this as to how it's actually going to work in the guilt phase? I mean, there was no question about the death penalty in the guilt phase, which is what he would be waiving the jury for. It just seems kind of like almost a non sequitur, but what do you think? Well, I guess this sort of goes a little bit to the Commonwealth's argument about, you know, he's got the benefit of the bargain now, right? He's got a life sentence. But he, the question is what he understood at the time he waived his right to a jury at the guilt phase. And at the guilt phase, he relied on that statement to waive a guilt phase jury. And that was, you know, that has been a problem in this case. For example, in the Pennsylvania Supreme Court's opinion on PCRA appeal, where they were looking at statements that were made later in the penalty phase when one of the claims in front of them went to the guilt phase. Can we factor in his IQ, so to speak, in this discussion? Yes. First of all, I think his claim that his jury waiver was invalid stands even without that mental disability evidence. How can we take that into account? I mean, if you look at the plea colloquy, I'm sorry, the waiver colloquy, he mentions he has a third grade education. I think that's about as far towards, excuse me, you know, I don't know that that's an intellectual disability. I mean, my father didn't go very far in school. He was a very smart man. What are we to do with that? It's true, Your Honor, that at the time, neither the court nor counsel knew of Mr. Perella's mental disabilities. Counsel, of course, because he hadn't bothered to investigate them. The court certainly knew that he didn't speak English and was working through an interpreter. But the evidence now on habeas, that of his mental disabilities, the court can take into consideration. He, I'm sorry, Your Honor, I'm sorry. He take into consideration going back in time? But if no one knew it, how can we take, you want us to take judicial notice of the fact that he has an intellectual disability with regard to his understanding of the promise and waiver? I'm so sorry, I don't get what you're saying. I think that his, the question of whether Mr. Perella's mental disabilities impacted his ability to understand the proceedings was, has been before the state courts all the way through from his first PCRA petition. But this particular argument wasn't raised in the direct appeal, was it? It was not raised on direct appeal, but it doesn't have to be raised on direct appeal. It needs to be, it was exhausted in the federal courts, sorry, in the state courts during PCRA. As to the guilt phase? Correct. If you like, I can take you through the places in the record where he raised them, raised it. That's okay. I mean, we've addressed it in our brief, but he raised it in his first PCRA petition. Judge Stout acknowledged that in her opinion on his PCRA petition. He raised it in his PCRA appeal, and it is referred to in the Pennsylvania Supreme Court's decision on PCRA appeal. He may not necessarily have used the exact words mental retardation, and that is obviously some of that is later developed evidence in the context of his resentencing in another case, and also in the Atkins hearing in this case. But he certainly put before those courts his mental disabilities, his difficulties understanding. Can I ask you? He presented four, I'm sorry. Can I ask you about dealing with Atkins? Maybe it was a subtle point, maybe he didn't mean to make the point at all, but did I, is one of your arguments that because a prior court applied Atkins, that that showing of disability should be applied, I guess, retroactively to back when he, as Judge Greenway pointed out, the colloquy on the waiver? In other words, because they made that finding later, are we supposed to sort of look back and say, well, it was the same back then, too? I think it is evidence that goes to his ability to understand the proceedings and to understand his rights, and that is a claim that is made on PCRA. But even Atkins itself makes the point that you can be competent to stay in trial and yet not get the death penalty because of your intellectual disability. So I don't think it's really equivalent. Well, let me maybe make this a little bit clearer. What Hillary v. Vasquez, sorry, Vasquez v. Hillary, I always get it the wrong way around, and Landano v. Raftery make clear that on habeas you can submit additional evidence that goes to the same claim that was presented to the same courts and the same factual predicate. He did present in PCRA appeal the claim that his waiver to a guilt phase jury was invalid and that his ability to understand those proceedings was impacted by his mental disabilities. So I want to make sure I understand, because if I'm understanding you correctly, the argument you're making is that we can find against you on the promise. We can adapt what prior courts have adapted that he had made the decision to waive before the promise, but now because we can take into account his intellectual disability, we can use the fact of his intellectual disability as a basis for saying his waiver was not knowing involuntary. That's your argument? You can, but you don't need to. Certainly our argument is that the objectively reasonable meaning of the judge's statement was such that anybody of normal intellect would have understood it in the context in which it was uttered as well as a promise not to impose the death penalty. Just first of all, the words on their face, he's not subject to the death penalty as long as he has need for a judge, but also if you look at the context in which that statement was made, where Mr. Phillips was trying to get the judge to rule on whether the charge was that Mr. Parrella was the actual killer or whether Mr. Parrella was a co-conspirator. And she said she couldn't rule because she hadn't heard the evidence and the prosecutor couldn't make that representation. Mr. Phillips said that this mattered, it was important, he said, because depending on which way the Commonwealth was going, that would determine whether he was subject to the death penalty or not. And at that point, the court said, why are you arguing all this? Didn't you say it was going to be a waiver? He said yes, and she said, he's not subject to the death penalty as long as he has need for a judge. If the penalty turned on the evidence, which is what the Pennsylvania Supreme Court's factual finding was, that she was really making a statement about if the evidence goes in a particular way, I won't grant the death penalty, it makes no sense that she even asked about a waiver. Why would she be asking about a waiver if she was supposedly talking about the evidence? And I think... But what did it do with that finding, though? I mean, it's entitled the sub-deference, right? I understand that doesn't apply. It has to be fairly supported... Right, by the record. By the record, and it's not fairly supported by the record. Is the opposite supported by the record, that he was equivocal? I believe, Your Honor, it's very firmly supported by the record that under a reasonably objective standard, and that's the standard I think this court has applied, for example, in United States v. Crusco, which was concerning statements made by a prosecutor and the government in connection with a sentencing for a guilty plea, the court said that, they said, judged by objective standards, the objective standards reasonably justified the defendant's mistaken impression. And that's the standard the Pennsylvania Supreme Court should have been applying to this exchange that took place at the pretrial hearing. They should have been looking at it by objective standards, not what was going on in Judge Stout's head. What was going on in Judge Stout's head in terms of this analysis and whether there was a voluntary knowing and intelligent jury waiver. It doesn't matter. What matters is the impression the words made on Mr. Perrella and how they impacted his decision to waive a jury trial. So is the promises question, we'll refer to it, is that? Yes, we refer to it that way as well, Your Honor. So is the promises question the only evidence that Mr. Perrella did not understand the gist of the waiver colloquy or might not have understood the gist of the waiver colloquy? You mean the impression created by the words at the pretrial hearing? Let me understand your question properly. So the argument is, your adversary says, well, you know, you're asked about promises and you say no promises, which in the inference you want us to draw is he couldn't have understood that question to be referring to this, Judge Stout's promise. And I'm wondering, is there any other evidence in the record that we can look to on this promises issue with regard to his understanding, his knowledge of the import of the waiver colloquy? Yes, I believe you can look to the evidence of his mental disabilities. This was somebody who was bringing to the table when he understood this, as even the state's experts said, he was somebody of subnormal intellect. Wasn't this submitted in conjunction with the guilt phase question and not the punishment phase? Wasn't this information submitted with the penalty phase information, not the guilt phase information? I'm sorry, submitted when? During the PCRA proceeding, right? Yes, in the first PCRA petition, Mr. Perella submitted four expert affidavits that went to his mental abilities. In her, he submitted affidavits from family members. But the legal argument, the legal theory dealt with the penalty, right? No, it dealt with both, Your Honor. It went to both the guilt phase and the penalty phase. And if you look at the Pennsylvania Supreme Court's opinion on appeal from PCRA, you will see that they were considering both guilt and penalty, even though they focused quite heavily, of course, on statements that were made at the penalty phase, which Mr. Perella would not have heard at the time he waived his guilt phase. Let me ask you, if we were to remand this for an evidentiary hearing, what would that look like? A good question. First of all, I would say it depends which factual issues this court considers are in dispute. But the issue of the promise, then I think the appropriate inquiries would be of Mr. Perella and his counsel with respect to their understanding of that promise. Mr. Perella's position, of course, is that this was clear to anybody, even of normal intellect, from what the transcript shows us. So the district would then view it through the prism of somebody of normal intellect? I think there would be a more subjective matrix viewed through Mr. Perella's intellect. In the first instance, I think that you can view it through the prism of somebody of normal intellect. Anybody would have understood this exchange as it took place at the pretrial hearing as meaning that although it was, of course, something that the judge really couldn't say, nonetheless, in that exchange, that was what she said. She tied the penalty to the waiver. She didn't tie it to how the evidence went in. She tied it to the waiver. And I think from the plain words, that's how anybody would understand it. But this court can additionally take into consideration the person who was hearing those words and his ability to understand them. But to go back to your question about the evidentiary hearing, those, I think, would be issues and the issue of whether he relied on it. Now, the affidavits, of course, here from Mr. Perella and his counsel are uncontradicted. And they did, those affidavits, which recite their understandings, were before the Pennsylvania Supreme Court on PCRA. Oh, I thought the answer was going to be longer. I'm still writing. One of the questions I had was, what advice should Perella's counsel have given him after the judge's statement? I think the advice he should have given him was, you know, the judge, I know the judge made this promise, but she is obliged to follow the law. And I need to advise you that it's still possible that she could impose the death penalty. I think that's the advice any lawyer would give under the standard in Strickland of reasonably, you know, objectively competent behavior. And I think that's true whichever way you read the promise. All right. Thank you. Thank you very much, Your Honour. Thank you, counsel. Thank you. Thank you.  My name is Joshua Goldworth, and I represent the Commonwealth of Pennsylvania's official respondents, the FLEs. As my friend's briefing acknowledges, if the state court's factual … Move the mic a little closer. I'm sorry, Your Honour. Thanks. As my friend's briefing acknowledges, if the state's factual findings have even fair support in the record, they must be presumed to be correct. Now, the petitioner concedes in his reply brief at page 24 that he's never claimed he was incapable of making a valid jury waiver. The claim is simply that what the judge said at the very, very end of the final pretrial proceedings on Friday led him and counsel into waiving a jury on Monday morning. But the state court factual finding that the judge's off-the-cuff remark at the very end of the proceedings on Friday didn't cause the waiver on Monday morning is fairly and, as the district court correctly found, fully supported by the record. And that's enough, I believe, to resolve this case. Well, it also could be a fair interpretation that it may have caused him to reinforce the waiver. So on Friday afternoon, the defendant hears, you're not getting death with me, what's he going to do, not waive? If the question is just reinforcing a decision that was already made, then the petitioner loses because he can't show that the error that he's claiming caused him to waive, caused the violation that he's claiming, if it's a decision that was already made. But the waiver didn't take place until it was put on the record, right? Well, I mean... He can't waive until you're colloquy. As a matter of procedure, the decision becomes final when it's officially confirmed on the record by the defendant. But I think as the court has held, there isn't a requirement of a colloquy. The only issue is whether the decision to waive is knowingly involuntary. And on that point, the petitioner can't just point to his affidavits, to his offers of proof, to what they don't address or they don't say about parts of the record that undermine his claim. So how is the Pennsylvania court's conclusion about the effect of this promise, how is that fairly supported by the record? What's in the record that supports that conclusion? Well, I mean, because initially what you have is, I mean, even on direct review, the state supreme court says, well, we know what the judge said. What about what your lawyer said five seconds before to which the judge was responding? I mean, as the obvious elephant in the room. And here, even though the state supreme court asks that question, all these years later, we still have the petitioner resting on silence in the record on why the petitioner, why counsel made the representation to the court that it was going to be a bench trial. In fact, we just heard an oral argument. We know what counsel said, but we don't know at that moment what the petitioner had thought or decided about a jury trial. And at this point, we don't know, and the record is silent about what the petitioner thought isn't enough. I mean, the argument here is that there just isn't anything in the record about what basis counsel had to make the representation to the court that he made that it was going to be a bench trial, even though obviously this is the very eve of trial. It's the Friday before the Monday when you're going to have a multi-defendant death penalty trial beginning that we don't really know because our affidavits don't say about the substance of what counsel and the client may have discussed about a waiver. And the record's silent about what he may have known or not at that time about the right to a jury, even though, as we know, he had just had two death penalty trials before juries in roughly the previous three months, and including just a month before this case, he had been not only unanimously convicted by a jury of first-degree murder, but unanimously sentenced to death. I mean, I know we have this argument. How many jury trials did he have that resulted in life sentences, two? He had... Jury trials, I'm talking about, before this. His first jury trial resulted in a first-degree murder conviction and a life sentence, and the one that was about a month or about five weeks before this trial ended, before a jury ended with a first-degree murder conviction and a death sentence, and that was the posture in which he was coming here. So that's two trials. I believe at the previous trial a month earlier he tried to waive a jury, but the court, as I mentioned in my brief, I think rejected the waiver attempt because it came too late and the court, I think, held that it was an opportunistic attempt to throw a monkey wrench in at the last moment in an attempt to gain, I think, severance. Well, I believe you're arguing that it's an unreasonable inference to draw that the counsel's statement just before the judge's promise was without consultation with Mr. Perella. They must have spoken. Well, and there's no evidence in the record to suggest otherwise. The presumption is that they did, and there isn't any evidence in the record to suggest that they didn't. The argument is, well, we don't know what they may or may not have discussed, therefore presume that they may not have and grant me relief. But that's not how collateral review works. I mean, that's reminiscent of the recent Supreme Court case of Burt v. Titlow where the Supreme Court said, well, the Court of Appeals granted relief on the basis that there's no evidence in the record about whether counsel gave adequate advice about this subject. That requires that the petitioner lose, not that he wins. I mean, we have this argument that maybe the petitioner somehow misunderstood or incorrectly remembered his very recent previous experiences with juries, but there's no evidence that supports it. I mean, that's just argument. I mean, the petitioner had both the opportunity and the obligation with the assistance of counsel from a very prominent law firm to come forward with evidence addressing why his lawyer said what he said, what basis he had to make it, and when the petitioner is arguing there is no evidence or there is insufficient evidence in the record about what counsel and I may have discussed or what I may have understood about the right to a jury, I mean, that really just means that the petitioner hasn't seen fit to say because it's the petitioner's proof, it's the petitioner's record, it's the petitioner's burden. And this business in the briefing about how trial counsel's strategy regarding jury versus bench trial was still so uncertain and in flux, even one business day away from the ending of trial, I mean, that is not a realistic view of the trial process, especially with a multi-defendant death penalty trial. Why is that? Because you'd have to have in hundreds of jurors? Well, I mean, for a variety of reasons, because I think all defense counsel are going to want to know, and just in terms of planning for trial, you're going to want to know, it's Friday. On Monday, am I going to be preparing to pick a jury and then do opening arguments? Or am I going to be preparing to have to start meeting the prosecution's case, which is going to begin immediately on Monday morning, because there probably aren't going to be even opening arguments because it's a bench trial. There are a lot of assumptions there. The only thing we have on the record is the last thing that he hears before he waives his right to a jury is, you're not getting a death penalty with me. That's the last thing he hears on Friday. On Monday, they have a colloquy. And that's the first time that this waiver is memorialized, right? It's the first time it's been memorialized. It's the only time it's been memorialized. It's the first time it's been memorialized by the client. Right. That's correct. All right. So you can't have a valid waiver based on this representation. You would agree with me, correct? I would agree with that. But, again, this is… Could this be construed as a promise from Judge Stout that you're not going to get the death penalty if you waive? Well, I mean, as I say again, and as I said in my brief, I mean, I think the record also shows, by the way the counsel proceeded throughout this trial, I mean, certainly counsel has behaved throughout the entire trial as inconsistent with the idea that he understood the judge to have made any such promise. But, again, you have the State Supreme Court even on direct review flagging the issue. You know, you're saying that what the judge said caused the waiver and that but for what the judge said there wouldn't have been a waiver on Monday morning. What about what your lawyer said? I mean, didn't your lawyer just say five seconds earlier, yes, it's going to be a waiver? I mean, surely that didn't come out of nowhere. And the response is just, we don't know because nothing in our affidavits say. And on collateral review, that is not enough. I mean, this was obviously not the first time that the counsel had represented that it was going to be a bench trial. In fact, if you go back about 25 pages or so to page 131 of the transcript from Friday, June 17th, you've got trial counsel telling the judge, I don't object to the prosecution's exhibits on pretrial motions being added to evidence, but I'm going to ask you, Your Honor, that you don't read them. I mean, there isn't any reason, and none has been suggested, why you'd ask the judge not to read the exhibits unless you know that the judge on the bench is going to be your trier of fact and you don't want her seeing exhibits that might or might not be admitted at trial. And even in counsel's affidavit, even in counsel's affidavit, counsel acknowledges that the posture that this unfolded was that he'd asked for some sort of pretrial ruling, premature ruling on the death penalty, and he acknowledges that he told the judge it was going to be a bench trial before the judge said what she said. The affidavit says, Judge Stout refused to make such a legal ruling before the evidence was presented at trial. Then she asks, why are you arguing all this? Didn't you say it was going to be a waiver? And counsel said, that's correct. Not, we haven't decided. Not, my client hasn't made the final decision. Not, I can't say our litigation strategy is also in flux. Of course, your adversary would say it's not the lawyer's call, it's the client's call. But I think with all litigation decisions, the decision is made jointly. The only distinction for these types of decisions are these are the few where the client is allowed to insist and overrule. And the client has the final say even when the lawyer disagrees, unlike most decisions. But that's not what's being argued here. There isn't any suggestion that the client would have disagreed and overruled. The suggestion is that he followed what counsel's advice was. And the contemporaneous record shows that it doesn't give you any reason to suspect otherwise than that the recommendation had been bench trial, bench trial, bench trial, bench trial. And then you have this completely unexplained line in counsel's affidavit where he says, I know what I said to the judge, but had the judge not said what she said, I then would have done a 180 and recommended to the client that he do exactly the opposite of what I had just represented to the court, not five seconds earlier, without any explanation or any explanation that they have seen fit to share with us. I mean, it certainly wouldn't have been because the client had done so well with juries in the past. And there isn't any suggestion, there isn't any suggestion that anything had changed after counsel said what he said that would have weighed in favor of a jury trial, absent what the judge said. Let me ask you this question. So your adversary says that with regard to our analysis of whether it was a knowing and voluntary waiver that we can take into account the defendant's intellectual disability as of June 17th, and I guess the 20th is the day of the plea. What use do you believe that we can take our subsequent knowledge of his intellectual disability with regard to his understandings of both her statement, the judge's statement on Friday, and then his ability to waive on Monday? Well, first, I think the issue about the client's misunderstanding of what the judge said, that sort of drops out if we accept the state court's finding that what the judge said didn't cause a waiver that wouldn't otherwise have happened. If we accept that finding, then that issue drops out. But the other response is whatever one makes of the subsequent acting's ruling, at a minimum that has to be harmonized with the state court's findings, both explicit and implicit, that the gentleman was competent to stand trial, but he was obviously capable of understanding the proceedings, able to participate fairly actively in his own defense, and obviously was able to testify at some length in his own defense at trial. Also, about events that happened about two years earlier, I know there's a suggestion that perhaps he incorrectly remembered or couldn't accurately remember what a jury was from a month earlier from his previous trial. But is there a procedural default here? I think that to the extent that we are talking about expanding the claim beyond that, which was presented to the state courts, I think there is. But I think that the point that I've made, it isn't necessary to address that if the court concludes that there's at least fair support in the record for the state court's finding and that there isn't convincing evidence rebutting it. In our view, counsels entirely, I mean, after all these years, entirely unexplained assertion that I know what I told the judge, but had the judge not then said what she said, I would have done a 180 and recommended that she do the exact opposite of what I just represented. I mean, that is anything but convincing evidence that can rebut state court findings that are supported by the record. Let me ask you the same thing I asked your opposing counsel. If we didn't send this back for an evidentiary hearing, what would it look like? I mean, again, I think the question would be what the parameters would be. I mean, I think that it would be difficult to understand how, you know, at this point, an evidentiary hearing to hear from the petitioner and the former attorney who represented him, you know, how that would be beneficial for them to say things that they haven't said, you know, all these many years. But I imagine if we were talking about, you know, what the judge said and the effect that it supposedly had, and we're talking about letting the lawyer, the former lawyer explain for the first time after all these years, you know, why he told the judge, you know, what he did, you know, I suppose those are the people we'd be talking about as witnesses. As hard as that would be to conceive, to be honest. Okay. Thank you, counsel. Thank you. Your Honor, unsurprisingly, the Commonwealth has, of course, focused on the Pennsylvania Supreme Court's finding that Mr. Perrella had already made the decision before this statement was ever made. And I would return to the point that the state court did not find that at that stage, Mr. Perrella had made a knowing, voluntary, and intelligent decision, and that is what is required by Supreme Court law. Also, in Johnson v. Serbs, the United States Supreme Court has said that courts should indulge every presumption against waiver of fundamental constitutional rights. The Commonwealth is inviting the court to make a lot of presumptions. The record here is also not silent on the issue. How is it an unreasonable presumption to assume that when an attorney, in responding to a judge's question, says, yes, it's definitely a waiver, that that means that the attorney has discussed it with his client when trial is on Monday in a multi-defendant case, and that, yes, they had in mind waiving a jury? Well, looking at the record here, I think it is an unreasonable presumption. There was plenty here in the record that was irregular about Mr. Phillips' conduct. He was still asking on Friday what the Commonwealth's theory of the case was. His trial strategy was in flux. He has said in his affidavit that he and his client had not yet reached a decision. This is not a Myers v. Gillis kind of case on whether to waive a jury or not at that point in the proceedings. And Mr. Perrella's prior experience, which the Commonwealth has also talked about, is not applicable here for two reasons. First of all, in Mr. Perrella's previous two trials, where he was tried to a jury and in one case got death and in one case got life, in those cases he had never been presented with the choice of a jury trial or a trial with a judge who had said she wouldn't impose the death penalty. So his prior experience didn't capture this kind of situation. Well, then wouldn't that relate to the notion that the answer to the promises question should have been obvious? Because his experience was, wow, that would be extraordinary. Now, you just told me, Mr. Phillips, that she promised that? That's amazing. That's extraordinary. Wouldn't that stick out in Mr. Perrella's mind? In the colloquy? And, therefore, when the question was posed in the colloquy, that would be the natural reaction? Well, bear in mind he hadn't had a waiver colloquy before because he didn't waive his right to a jury in those cases. Also, if you look at the cases that the Commonwealth cites, in all those cases there had been a prior finding by the state courts regarding the defendant's understanding of his rights in Marshall v. Lomberga and the Kentucky courts, Ohio courts, I'm sorry, had found evidence that the plaintiff understood his rights, was intelligent. Here, the state courts never made any finding. There's never been an evidentiary hearing on the question of whether Mr. Perrella was, as it were, an experienced defendant. So let me ask you this question, which relates to an earlier question that was posed by Judge Restrepo. So in this evidentiary hearing that would occur if things go the way that you'd like it to go, Mr. Perrella would be asked about understandings that he had 30, by then 34 years ago, probably. I don't think it would happen this year. How is that going to be any more insightful than the transcript of what his responses were at the time? I mean, I know the lawyer, too. Mr. Perrella believes that on the record before it, this court can grant a new trial. It doesn't have to grant an evidentiary hearing because here the record's clear enough. The facts aren't being disputed. You're not asking for an evidentiary hearing. No, we are asking in the alternative for an evidentiary hearing. Indeed, we've asked for both in our papers. But Mr. Perrella would submit that the record is sufficiently developed here and is clear enough that this court can grant him a new trial. And given the extraordinary circumstances here, Mr. Perrella should be entitled to relief. Thank you, counsel. We'll take the case under advisement. And thank you, counsel, for your excellent arguments, both written and oral. And we'd like to greet you at sidebar as well. Clerk will adjourn court. Please rise. This court stands adjourned until September 15th at 10 a.m.